| | |
|---|---|
| GEORGE ANDERS,<br><br>    Plaintiff/Claimant,<br><br>v.<br><br>ANDREW SAUL,<br>Commissioner of Social Security,<br><br>    Defendant. | ORDER |

This matter is before the court on the parties' cross-motions for judgment on the pleadings [DE-15, -19] pursuant to Fed. R. Civ. P. 12(c). Claimant George Anders ("Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the denial of his applications for a period of disability and Disability Insurance Benefits ("DIB"). The time for filing responsive briefs has expired, and the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, Claimant's Motion for Judgment on the Pleadings is allowed, Defendant's Motion for Judgment on the Pleadings is denied, and the case is remanded to the Commissioner, pursuant to sentence four of § 405(g), for further proceedings.

## I. STATEMENT OF THE CASE

Claimant protectively filed an application for a period of disability and DIB on December 13, 2016, alleging disability beginning August 26, 2015. (R. 15, 187–88). His claim was denied initially and upon reconsideration. (R. 15, 80–105). A hearing before the Administrative Law Judge ("ALJ") was held on September 5, 2018, at which Claimant, represented by counsel, and a

vocational expert ("VE") appeared and testified. (R. 15, 32–79). On December 4, 2018, the ALJ issued a decision denying Claimant's request for benefits. (R. 12–31). On October 22, 2019, the Appeals Council denied Claimant's request for review. (R. 1–6). Claimant then filed a complaint in this court seeking review of the now-final administrative decision.

## II. STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996), *superseded by regulation on other grounds*, 20 C.F.R. § 416.927(d)(2)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

2

## III. DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. § 404.1520 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. § 404.1520a(b)–(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. *Id.* § 404.1520a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id.* § 404.1520a(e)(3).

In this case, Claimant alleges the ALJ erred in: (1) weighing the opinion of Dr. Bamdad Farhad and (2) failing to perform a function-by-function evaluation of Claimant's ability to lift and handle with his left hand. Pl.'s Mem. [DE-16] at 8–15.

3

## IV. ALJ'S FINDINGS

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. At step one, the ALJ found Claimant had not engaged in substantial gainful employment since August 26, 2015, the alleged onset date. (R. 17). Next, the ALJ determined Claimant had the following severe impairments: right shoulder dysfunction; status post two arthroscopic surgeries; missing digits of the left hand, second, third, and fourth fingers; degenerative disc disease of the lumbar spine; hypertension; and obesity. *Id.* The ALJ also found Claimant had nonsevere impairments of gastroesophageal reflux disease ("GERD"); syncope, one episode with coughing spell, no significant treatment; bronchitis; sinusitis; hiatal hernia, little treatment; left elbow, epicondylitis, little treatment; left lower extremity laceration; glucose intolerance/pre-diabetes; acute diverticulitis with microperforation; thrombocytopenia, no significant treatment; history of probable TIA (transient ischemic attack), with facial weakness, resolved, with no recent treatment, with negative CT scan; tobacco abuse; and skin tags. (R. 17–18). However, at step three, the ALJ concluded these impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 18).

Prior to proceeding to step four, the ALJ assessed Claimant's RFC, finding Claimant had the ability to perform light work[1] requiring the following limitations:

> occasionally push/pull and operate hand controls with the right upper extremity; never push/pull and operate hand controls with the left upper extremity; occasionally climb ramps or stairs; never climb ladders, ropes or scaffolds;

---

[1] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If an individual can perform light work, he or she can also perform sedentary work, unless there are additional limiting factors such as the loss of fine dexterity or the inability to sit for long periods of time. 20 C.F.R. § 404.1567(b).

4

occasionally balance; frequently stoop, kneel and crouch; occasionally crawl; frequently reach with the right upper extremity; never reach overhead with the right upper extremity; frequently handle objects and finger with the right upper extremity; occasionally handle objects with the left upper extremity; and never finger with the left upper extremity.

(R. 18–25). In making this assessment, the ALJ found Claimant's statements about his limitations not entirely consistent with the medical and other evidence. (R. 24).

At step four, the ALJ concluded Claimant did not have the RFC to perform the requirements of his past relevant work as an automobile body repairer, department manager, shop estimator, or tow truck operator. (R. 25). Nonetheless, at step five, upon considering Claimant's age, education, work experience, and RFC, the ALJ determined Claimant is capable of adjusting to the demands of other employment opportunities that exist in significant numbers in the national economy. (R. 26–27).

## V. DISCUSSION

### A. The ALJ erred in weighing the medical opinion of Dr. Farhad.

Claimant contends the ALJ erred in giving partial weight to Dr. Farhad's opinion. Pl.'s Mem. [DE-16] at 8–11. When assessing a claimant's RFC, the ALJ must consider the opinion evidence. 20 C.F.R. § 404.1545(a)(3). Regardless of the source, the ALJ must evaluate every medical opinion received. *Id.* § 404.1527(c). In general, the ALJ should give more weight to the opinion of an examining medical source than to the opinion of a non-examining source. *Id.* § 404.1527(c)(1). Additionally, more weight is generally given to opinions of treating sources, who usually are most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability, than non-treating sources such as consultative examiners. *Id.* § 404.1527(c)(2). When the opinion of a treating source regarding the nature and severity of a claimant's impairments is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not

5

inconsistent with the other substantial evidence," it is given controlling weight. *Id.* However, "[i]f a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Craig*, 76 F.3d at 590.

If the ALJ determines that a treating physician's opinion should not be considered controlling, the ALJ must then analyze and weigh all of the medical opinions in the record, taking into account the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist. *Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005) (citing 20 C.F.R. § 404.1527). An ALJ may not reject medical evidence for the wrong reason or no reason. *See Wireman v. Barnhart*, No. 2:05-CV-46, 2006 WL 2565245, at *8 (W.D. Va. Sept. 5, 2006). "In most cases, the ALJ's failure to consider a physician's opinion (particularly a treating physician) or to discuss the weight given to that opinion will require remand." *Love-Moore v. Colvin*, No. 7:12-CV-104-D, 2013 WL 5350870, at *2 (E.D.N.C. Sept. 24, 2013) (citations omitted). However, "[a]n ALJ's determination as to the weight to be assigned to a medical opinion generally will not be disturbed absent some indication that the ALJ has dredged up 'specious inconsistencies,' or has failed to give a sufficient reason for the weight afforded a particular opinion." *Dunn v. Colvin*, 607 F. App'x 264, 267 (4th Cir. 2015) (quoting *Scivally v. Sullivan*, 966 F.2d 1070, 1077 (7th Cir. 1992)).

Dr. Farhad performed a consultative examination of Claimant on February 18, 2017. (R. 581–84). He concluded:

> The claimant has mild limitations with sitting, mild-to-moderate limitations with standing and mild limitations with walking. He has moderate limitations with lifting and carrying on the right. He is unable to lift or carrying (sic) a thing with

6

> the left hand. He has moderate limitations with reaching and mild limitations with handling with the right hand. No limitation with feeling or grasping and again no functionality with the left hand. The claimant also has mild limitations with bending, moderate limitations with stooping, crouching, and squatting. The claimant does not have any visual or communicative limitations. He does not use an assistive device to ambulate.

(R. 583–84). The ALJ gave Dr. Farhad's opinion partial weight because it

> is consistent with his thorough exam and mostly consistent with the objective medical and other evidence of record, as described above. However, the complete record, to include the claimant's testimony, supports the residual functional capacity herein, to include claimant's left upper extremity limitations. Of note, Dr. Farhad only examined the claimant one time and his limitations are not expressed in vocationally relevant terms.

(R. 25).

First, the ALJ found that Dr. Farhad's opinion is mostly consistent with the record, but the complete record, including Claimant's testimony, supports the RFC. *Id.* Claimant contends that the ALJ's reasoning is unpersuasive, Pl.'s Mem. [DE-16] at 9–11, and the court agrees that Claimant's testimony appears consistent with Dr. Farhad's opinion. Claimant testified that he injured his left hand in 1989 and has adapted over the years, including doing bodywork on cars sometimes, turning a wrench if it is not small, using a ratchet screwdriver, writing with his right hand, and operating a wrecker. (R. 41–43). He worked as an assistant manager and then as a manager of a body shop, where he lifted up to twenty-five pounds. (R. 44–47). However, when he injured his shoulder in August 2015, the alleged onset date, he stopped working entirely. (R. 48). He owns four vehicles, and he does not work on them at all; he does not even change the oil. *Id.* Claimant testified that he cannot reach overhead; he can pick up a loaf of bread, cereal, and a two liter soda; he drops glasses of tea when he tries to pick them up; most days, his pain is four or five out of ten; extra strength Tylenol makes the pain bearable; he can shower but needs help getting a shirt over his shoulder; he can vacuum and wash clothes with breaks; his wife cooks, and

7

he puts dishes in the dishwasher; he cuts the grass with a riding lawnmower; and he goes to the grocery store. (R. 49–55). He can drive short distances, but if he drives twelve miles, he is uncomfortable and stiff. (R. 57). His shoulder pain gets worse at night, and he is not able to sleep more than five hours, so he has to take a nap during the day. (R. 62). The ALJ found that Dr. Farhad's opinion was consistent with his exam and most of the record, but noted that the entire record, including Claimant's testimony, supported the RFC, thereby implying that Claimant's testimony was inconsistent with Dr. Farhad's opinion. (R. 25). It is not clear how Claimant's testimony is inconsistent with the opinion, and the court is unable to trace the ALJ's reasoning with respect to his first reason for discounting the opinion.

Second, the ALJ explained that he discounted the opinion because Dr. Farhad examined Claimant only once. (R. 25). This rationale may serve as a reason for discounting an opinion, for more weight is generally given to treating sources than non-treating sources. *See* 20 C.F.R. § 404.1527(c)(2) (explaining that more weight is generally given to opinions of treating sources, who usually are most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability, than non-treating sources such as consultative examiners); *Lamb v. Saul*, No. 2:19-CV-26-FL, [DE-31], at *9 (E.D.N.C. July 6, 2020) (finding no error where an ALJ discounted an opinion because a consultative examiner saw the claimant on only one occasion), *adopted by* 2020 WL 4784699, at *3 (E.D.N.C. Aug. 18, 2020). Here, however, the ALJ weighed three medical opinions, and they were all from consultants. (R. 24–25). The ALJ gave significant weight to the other two medical opinions and explained that he did so because they were consistent with the overall record. (R. 25). It is not clear how Dr. Farhad's opinion is different; as explained above, the ALJ found that his opinion was mostly consistent with the record, and the ALJ did not explain how it was inconsistent with Claimant's testimony. Additionally, the other two consultants were

8

non-examining sources, but Dr. Farhad examined Claimant. *See* 20 C.F.R. § 404.1527(c) (providing that an ALJ should generally give more weight to the opinion of an examining medical source than to the opinion of a non-examining source). The court cannot trace the ALJ's reasoning in giving partial weight to Dr. Farhad's opinion and significant weight to the non-examining consultants' opinions.

Third, the ALJ found that Dr. Farhad did not express Claimant's limitations in vocationally relevant terms. (R. 25). A vocationally relevant term "provides functional limitations arising from [the claimant's] impairments." *Gillis v. Colvin*, No. 1:14CV426, 2015 WL 4644777, at *6 (M.D.N.C. Aug. 4, 2015). Here, Dr. Farhad assessed Claimant's ability to sit, stand, walk, lift, carry, handle, feel or grasp, bend, stoop, crouch, and squat. (R. 583–84). It is not clear how Dr. Farhad's opinion is vocationally irrelevant. *See Jones v. Saul*, No. 5:18-CV-177-BO, 2019 WL 2884279, at *2 (E.D.N.C. July 3, 2019) (finding that an ALJ erred in concluding that an opinion was not expressed in vocationally relevant terms because "Dr. Coplin's opinions are in regard to plaintiff's ability to sit, stand, lift and carry, and push and pull, which are directly relevant to the inquiry into whether a claimant can perform substantial gainful activity."). Accordingly, the court cannot trace the ALJ's reasoning with respect to any of the three reasons he discounted Dr. Farhad's opinion, and remand is appropriate for the ALJ to more thoroughly explain the weight given to the opinion.

**B.    The ALJ did not err in failing to perform a function-by-function evaluation of Claimant's ability to lift and handle.**

Claimant contends the ALJ failed to adequately explain the limitations to occasional handling with the left hand and the full range of light lifting and carrying. Pl.'s Mem. [DE-16] at 12–15. "[T]he residual functional capacity 'assessment must first identify the individual's

9

functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions' listed in the regulations." *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (quoting S.S.R. 96-8p). The ALJ must provide "a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Id.* (quoting S.S.R. 96-8p). "Only after such a function-by-function analysis may an ALJ express RFC 'in terms of the exertional levels of work.'" *Monroe v. Colvin*, 826 F.3d 176, 179 (4th Cir. 2016) (quoting *Mascio*, 780 F.3d at 636); *see also Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000) (observing that the ALJ "must build an accurate and logical bridge from the evidence to his conclusion"). However, the Fourth Circuit has rejected "a per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis." *Mascio*, 780 F.3d at 636. Rather, the court explained that "[r]emand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *Id.* (citation omitted). Therefore, despite an ALJ's failure to conduct the function-by-function analysis, the court must look to the ALJ's RFC discussion to determine whether it otherwise provides a sufficient basis for meaningful review.

In regards to Claimant's ability to handle, lift, and carry, the ALJ noted: "The claimant asserts pain with using his upper right shoulder/arm for lifting and/or carrying and difficulty with handling and fingering due to severed fingers." (R. 19). The ALJ then discussed Claimant's April 2015 MRI of his right shoulder, which showed a rotator cuff tear; his May 2015 surgery on his right shoulder; his May, June, and July 2015 orthopedic follow-up visits in which he reported pain and problems lifting his right arm; his August 2015 MRI which showed a recurrent rotator cuff

10

tear; his September 2015 surgery; his October 2015 follow-up appointment in which Claimant noted less pain; his November and December 2015 physical therapy notes in which Claimant was making good progress and had "fairly mild" pain; his January 2016 physical therapy notes in which Claimant was making slow progress but was improving; his February 2016 physical therapy notes in which he reported to be independent in all self-care activities; his March 2016 physical therapy notes in which he had decreased pain with overhead lifting; his April 2016 physical therapy notes in which he was hesitant to do yard activities with his right arm; his July 2016 primary care visit in which Claimant reported intermittent pain and limited range of motion and stated that he was using his left hand more due to his right shoulder pain; his November 2016 injury to his right shoulder when he fell due to a syncopal episode after a coughing spell; his November 2016 X-rays of his right shoulder that showed no fracture or dislocation; his December 2016 follow-up visit where he did not report shoulder pain and had an unremarkable physical exam; Dr. Farhad's February 2017 consultative exam, where Dr. Farhad observed decreased range of motion with the right shoulder, amputated stumps for the second, third, and fourth fingers on his left hand, and minimal functionality of the left hand; Dr. Melvin Clayton's March 2017 RFC assessment, in which he concluded that Claimant can perform frequent overhead reaching, occasional handling with the left hand, and no fingering; and Claimant's testimony.

The ALJ summarized his discussion of Claimant's left hand and right shoulder impairments as follows:

> The claimant has a history of right shoulder dysfunction with two surgeries for a torn rotator cuff during 2015. The claimant had improvement of movement and function after the second surgery, as noted in his physical therapy records. The claimant has reported continued residual pain and problems in lifting and carrying and reaching overhead, which have been fully considered. However, the claimant has had no further surgeries and no injections for pain. In October 2015, the claimant noted having less pain (B4F/81), and in January 2016 the claimant noted

11

an improvement of pain and function after physical therapy (B4F/23, 40, 43, 60). In February 2016, the claimant was noted to be independent in his self-care (B4F/34). ... The claimant has limitations due to missing digits on his left hand, with no related significant pain issues, which have been fully considered. ... Many of the claimant's physical exams have been overall unremarkable, except for noted obesity (B4F/60; B6F/9, 47; B8F/2, 5–6, 10, 13; B10F/2, 7, 10). Further, the claimant has a good range of daily activities, being able to perform his own hygiene, dress, feed himself, perform light household chores, mow the lawn with a riding mower, shop for food, go out alone, and drive a car.

(R. 24).

The ALJ thereby provided a sufficient basis for review of his RFC determination. *See Juliano v. Saul*, No. 7:19-CV-68-D, 2020 WL 3067269, at *6 (E.D.N.C. Apr. 30, 2020) ("The ALJ did not specifically explain why he limited Claimant to frequent handling and fingering, as opposed to occasional, in his narrative discussion. However, the ALJ's discussion of Claimant's left hand impairment does not frustrate meaningful review."), *adopted by* 2020 WL 3066617 (E.D.N.C. June 8, 2020). The ALJ explained that he included the relevant limitations because Claimant's pain and function improved over time following his shoulder surgeries and Claimant can perform a range of daily activities. (R. 24). The ALJ thoroughly discussed the evidence and built an accurate and logical bridge from the evidence to his conclusion; accordingly, he did not err in failing to provide a function-by-function assessment of Claimant's abilities to lift, carry, and handle. However, the ALJ's reconsideration of Dr. Farhad's opinion may affect the RFC, so the ALJ should reconsider the RFC as necessary on remand.

## VI. CONCLUSION

For the reasons stated above, Claimant's Motion for Judgment on the Pleadings [DE-15] is ALLOWED, Defendant's Motion for Judgment on the Pleadings [DE-19] is DENIED, and this matter is REMANDED to the Commissioner, pursuant to sentence four of § 405(g), for further proceedings consistent with this Order.

12

So ordered, the 21st day of September 2020.

_____
Robert B. Jones, Jr.
United States Magistrate Judge

13